[Exchange National Bank of Montgomery, et al. v. Stewart, Trustee.]

# Exchange National Bank of Montgomery, *et al. v.* Stewart, Trustee.

*Bill to Avoid Fraudulent Transfer,*

(Decided Jan. 21, 1909. 48 South. 487.)

1. *Fraudulent Conveyances; Remedy at Law.*—The fact that a creditor may be entitled to an action at law for money received does not deprive him of his right to a bill to set aside an alleged fraudulent transfer of property by an insolvent debtor.

2. *Same; Property Which May be Subjected.*—Money being leviable property may be reached by a creditor's suit, when fraudulently disposed of by an insolvent corporation; so may the proceeds of checks paid from the assets of an insolvent debtor.

3. *Same; Pleading; Complaint.*—Averments in a creditor's bill that payments, which are sought to be set aside, were made with the intent to hinder, delay and defraud creditors, and were without consideration, are sufficient as to want of consideration for the payments alleged to have been fraudulently conveyed.

4. *Bankruptcy; Avoidance by Trustee; Fraudulent Transfer.*—A trustee in bankruptcy of an insolvent debtor may maintain a bill to set aside an alleged fraudulent transfer of property by the insolvent debtor.

5. *Executions; Property Subject; Money.*—Money is property subject to levy of execution.

6. *Equity; Pleading; Multifariousness.*—The fact that a creditor's bill joins two or more defendants alleged to be fraudulent grantees in different transactions, in an effort to set aside fraudulent transfers of property, does not render it demurrable for multifariousness or misjoinder of defendants.

APPEAL from Montgomery City court.

Heard before Hon. A. D. SAYRE.

Action by Mose W. Stewart, trustee in bankruptcy, against the Exchange National Bank of Montgomery and the Union Bank & Trust Company. From a judgment overruling demurrers to the bill, defendants appeal. Affirmed.

The bill alleges: That the Conecuh Pine Lumber & Manufacturing Company was a corporation under the laws of Alabama, and on the 4th of June, 1907, it was

[Exchange National Bank of Montgomery, et al. v. Stewart, Trustee.]

adjudged to be a bankrupt, and the complainant was appointed the trustee on the 24th day of June, 1907, and qualified as such on June 25th; that the Exchange National Bank of Montgomery is a corporation organized under the national banking laws, and is engaged in the business of banking in the city of Moontgomery, and the Union Bank & Trust Company is a corporation organized under the laws of Alabama, and has been engaged in the business in Montgomery, Ala.; that on or prior to June 30, 1906, and on March 1, 1907, respectively, the Conecuh Pine Lumber & Manufacturing Company was engaged in business in the city of Montgomery, and on the dates last above mentioned was indebted to the Fourth National Bank of Montgomery in a large sum, towit, $10,000 or more, which indebtedness had been continuously in existence since and prior to June 30, 1906; that the Conecuh Pine Lumber & Manufacturing Company was also indebted to numerous and divers other persons on said dates; and that a large portion of said indebtedness is still due and unpaid. It is further shown on information and belief that on June 30, 1906, Thomas W. Tebb and R. N. Chestnutt executed and delivered to said Union Bank & Trust Company a note for $7,000 dated June 30, 1906, and payable December 30, 1906, which note is attached as an exhibit to the bill. It is further averred on information and belief that the note is secured by 330 shares of the capital stock of the Conecuh Pine Lumber & Manufacturing Company, of the par value of $25, and issued to Thomas W. Tebb and placed by him with said Union Bank & Trust Company as collateral security for said note, and that said note, with the collateral security, was transferred to the Exchange National Bank for a consideration unknown to orator. It is further averred on information and belief that said Conecuh Pine Lumber & Manufacturing Com-

[Exchange National Bank of Montgomery, et al. v. Stewart, Trustee.]

pany had an account with the Union Bank & Trust Company, and that they delivered to the Union Bank & Trust Company a check for $280 (check is made exhibit to the bill), and that the amount of said check was appropriated by said Union Bank & Trust Company under some arrangement, express or implied, between said Union Bank & Trust Company and the Conecuh Pine Lumber & Manufacturing Company, or its officer or officers, agent or agents, and was applied in payment of the interest for a period of six months on the $7,000 note signed by Tebb and Chestnut, and the amount of said check charged by said Union Bank & Trust Company to the account of said Conecuh Pine Lumber & Manufacturing Company, without any adequate, legal, or valid consideration of said Conecuh Pine Lumber & Manufacturing Company from any person or corporation for the amount of said check, and that when the said Union Bank & Trust Company marked said check paid, and applied the amount thereof to the payment of the interest on said note of Tebb and Chestnutt, and charged the same to the account of the Conecuh Pine Lumber & Manufacturing Company, it knew that said money was being appropriated out of the assets of said Conecuh Pine Lumber & Manufacturing Company on the debt of Tebb and Chestnutt for and on which said Conecuh Pine Lumber & Manufacturing Company was in no manner legally liable.

It is further averred on information and belief that prior to June 30, 1906, said Union Bank & Trust Company held a note signed by said Tebb and Chestnutt, or on which they were each liable in the sum of $8,000, and that prior to June 30, 1906, payments were made on such notes or debts at divers times out of the money or assets of said Conecuh Pine Lumber & Manufacturing Company, on the debt of said Tebb and Chest-

[Exchange National Bank of Montgomery, et al. v. Stewart, Trustee.]

nutt aggregating the sum of $2,000, and that at the time said payments were made, out of the assets of said Conecuh Pine Lumber & Manufacturing Company, said Union Bank & Trust Company knew that said payments were made out of the assets of the lumber company, and that said payments were illegal and fraudulent as against the rights of the creditors of the lumber company. It is averred that complainant is not advised as to the date of the payments, except that they were made during the years 1905 and 1906, and he avers that there was no legal, adequate, or valuable consideration to said Conecuh Pine Lumber & Manufacturing Company for such payments or either of them so made to the Union Bank & Trust Company on the debt of said Tebb and Chestnutt, and that such payments were fraudulent as against the rights of the Fourth National Bank of Montgomery and other creditors of said Conecuh P. L. & M. Co., holding debts against it, at the time said payments were made. It is further averred on information and belief that on March 1, 1907, the check of the Conecuh Pine Lumber & Manufacturing Company, for the sum of $5,096.44, was delivered to said Exchange National Bank of Montgomery (this check is made an exhibited), and the the amount of said check was delivered by Exchange National Bank to itself, and $5,000 of said amount credited on said note for $7,000 made by said Tebb and Chestnutt, and the balance of said check, $96.44, applied to the interest on said note by said Exchange National Bank, and that the amount of the check is charged to the account of said Conecuh Pine Lumber & Manufacturing Company, on the books of said Exchange National Bank of Montgomery and taken out of the money which said Conecuh Pine Lumber & Manufacturing Company had on deposit with the said Exchange

[Exchange National Bank of Montgomery, et al. v. Stewart, Trustee.]

National Bank, and that at the time of the payment of said check and the charging of it to the account of the Conecuh Pine Lumber & Manufacturing Company, by said bank, the bank knew that said money was being received and credited on said note of Tebb and Chestnutt on which said Conecuh Pine Lumber & Manufacturing Company was in no manner legally liable. It is then alleged that these transactions were separately and severally made with the intent to hinder, delay, and defraud the creditors of the said Conecuh Pine Lumber & Manufacturing Company, and without legal or adequate valuable consideration to said Conecuh Pine Lumber & Manufacturing Company; or that said payments were voluntary on the part of said Conecuh Pine Lumber & Manufacturing Company, and without any legal, adequate, valuable consideration to it, and constituted a mere gift or unlawful disposition of its assets or money to that extent in such manner that it was and is a fraud on and against its creditors, and void or voidable as against the rights of its creditors. Then follows an averment of the different debts owing by said company with the prayer for relief. A number of demurrers were filed to the bill raising the points decided in the opinion.

FRED S. BALL, and J. M. CHILTON, for appellant. The bill is wholly without equity. It is not sought to impeach the transaction by actual fraud, and the allegations amount to nothing in the absence of facts stated to sustain it.—*Smith v. Teague*, 119 Ala. 385; *Curran v. Armstrong*, 101 Ala. 692. The question is one of constructive fraud, and the release by the bank of a corresponding amount of a valid debt did not put it in the position of a voluntary donee of the sum.—*Bibb v. Freeman*, 59 Ala. 612; *Croker v. Shropshire*, 59 Ala. 542. The bill does not bring the case within the influence of *Hall &*

[Exchange National Bank of Montgomery, et al. v. Stewart, Trustee.]

*Farley v. Henderson,* 126 Ala. 449. The bankrupt could have recovered at law, and the trustee has his same title.—Bankruptcy Acts 1898, sec. 70; *Johnson v. Little,* 141 Ala. 382; *Youngblood v. Koungblood,* 54 Ala. 486; *Smith v. Cockrell,* 66 Ala. 77. The bill fails to allege with sufficient distinctness the absence of the consideration moving, to say nothing of the fact that it affirmatively shows a valuable consideration of detriment to the two banks. Facts and not conclusions should have been stated.—*Perry County v. R. R. Co.,* 104 Ala. 138; *Bowling v. Crook,* 104 Ala. 132; *Kellar v. Burlington,* 101 Ala. 267.

R. L. HARMON, for appellee. The demurrers to the bill were properly overruled on the following authorities. —*Hall v. A. T. & I. Co.,* 143 Ala. 481; *Hall v. Henderson,* 126 Ala. 449; *Woolf v. The State,* 79 Ala. 206; Bankruptcy Act 1898, sec. 70; Collier on Bankruptcy, 935-6; Secs. 3739, 3509, Code 1907; Sec. 818, Code 1896. The bill is not subject to the objection of multifariousness or misjoinder of parties defendant.—*Hill Bros. et al v. Moone,* 104 Ala. 353; *Guyton v. Terrell,* 132 Ala. 66; 5 Mayfield's Digest, p. 340, Section 78; *Henderson v. Hall,* 134 Ala. 507; *Wimberly, et al. v. Montgomery Fertilizer Co.,* 132 Ala. 107.

DOWDELL, J.—In its simple analysis the bill is a creditor's bill to set aside an alleged fraudulent transfer of the property by an insolvent debtor and for an accounting, and as such contains equity.

It is no objection to the bill that the creditor may have his action at law for money had and received. The bill is authorized under the statute.—Code 1907, § 3739.

The bill is properly filed in the name of the trustee in bankruptcy. As such he stands in the place of the

[Exchange National Bank of Montgomery, et al. v. Stewart, Trustee.]

creditors, and may recover in any case where the creditors could have recovered.

Money is leviable property, and, when fraudulently disposed of by a debtor corporation, may be reached by creditors by bill in chancery.—*Hall v. A. T. I. Co.,* 143 Ala. 481, 39 South. 285, 2 L. R. A. (N. S.) 130.

Checks drawn by a debtor corporation, which are paid out of its assets, are equivalent to money, and the proceeds of the checks or the money represented by them may be recovered as property fraudulently trasferred, the same as money.—*Hall & Farley, Trustees, v. Henderson,* 126 Ala. 449, 485, 486, 28 South. 531, 61 L. R. A. 621, 85 Am. St. Rep. 53; *Wolffe v. State,* 79 Ala. 206, 58 Am. Rep. 590.

We think the averments of the bill that the payments in question were made "with the intent to hinder, delay, and defraud the creditors of said Conecuh Pine Lumber & Manufacturing Company and without legal and adequate valuable consideration to said Conecuh Pine Lumber & Manufacturing Company for the same" are sufficient as to want of consideration for the said payments in an allegation of fraudulent transfer as to creditors, and render the bill unobjectionable to demurrer in this respect.

The bill, as a creditor's bill to set aside fraudulent transfers, is not open to the objection of multifariousness, or misjoinder of defendants, in that it joins two or more defendants alleged to be fraudulent grantees in different transfers and transactions. It has often been decided by this court that this may be done.—*Hill Bros. v. Moone,* 104 Ala. 353, 16 South. 67; *Guyton v. Terrell,* 132 Ala. 66, 31 South. 83; 5 Mayfield's Dig. p. 340, § 78; *Henderson v. Hall,* 134 Ala. 507, 32 South. 840, 63 L. R. A. 673; *Wimberly v. Montgomery Fertilizer Co.,* 132 Ala. 107, 31 South. 524.

[Adams v. Atkinson.]

We find no error in.the decree appealed from, and it will be affirmed.

Affirmed.

SIMPSON, ANDERSON and DENSON, JJ., concur.